

FILED

FEB -5 2018

CLERK'S OFFICE
CIVIL DISTRICT COURT

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

### STATE OF LOUISIANA

NO. 2018-1149                                    DIVISION "M" 13

### RENEE REESE

### VERSUS

### MARKETRON BROADCAST SOLUTIONS, LLC

FILED:_____        _____
                                      DEPUTY CLERK

### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, AND, IN THE ALTERNATIVE, MOTION TO EXTEND DEADLINE FOR CLASS CERTIFICATION

NOW INTO COURT comes Plaintiff Renee Reese, by counsel, individually and on behalf of all others similarly situated, who respectfully submits the instant Motion for Class Certification. Plaintiff notes that this motion is being submitted pursuant to La. Civil Code of Procedure 592(A) and reserves her right to supplement the Motion for Class Certification upon the conclusion of discovery. The proposed Class is legally and factually appropriate and warranted, and Plaintiff's Motion for Class Certification should be granted. Plaintiff maintains that the class satisfies all La. CCP 591(A) pre-requisites for certification and commonality predominates over any individual issues. In support of this motion, Plaintiff relies on the arguments set forth in the attached memorandum.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment on her behalf.

Respectfully submitted,

_____
Roberto Luis Costales (#33696)
William H. Beaumont (#33005)
Emily. A. Westermeier (#36294)
Jonathan M. Kirkland (#37937)
BEAUMONT COSTALES LLC
3801 Canal Street, Suite 207
New Orleans, LA 70119
Telephone: (504) 534-5005
Facsimile: (504) 272-2956
*Attorneys for Plaintiff*

VERIFIED
2/14/2018

VERIFIED
2-7-18



FILED

FEB - 5 2018

CLERK'S OFFICE
CIVIL DISTRICT COURT

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

## STATE OF LOUISIANA

NO.                                                    DIVISION " "

### RENEE REESE

### VERSUS

### MARKETRON BROADCAST SOLUTIONS, LLC

FILED:_____          _____
                                            DEPUTY CLERK

## ORDER

UPON CONSIDERING THE FOREGOING:

IT IS ORDERED that Defendant, Marketron Broadcast Solutions, LLC, appear and show

cause on the ___05th___ day of ___April___, 2018 at 9<sup>00</sup> A.m. why class

certification should not be granted and, alternatively, why Plaintiff's deadline to move for class

certification should not be extended.

THUS DONE in New Orleans, Louisiana this __8th__ day of __FEB 0 8 2018__, 2018.

JUDGE
                        Sgd, Paulette R. Irons
                        Judge, Division M, Section 13

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

ENTERED ON MINUTES

FEB 0 9 2018

CHARLENE WILLIAMS



ENTERED RULE DOCKET/COMPUTER_____
SERVICE COPIES TO SHERIFF_____
CARD WITH RULE DATE MAILED_____
COPY OF DOCUMENT MAILED_____
RULE DATE RECEIVED_____

FILED
FEB -5 2018
CLERK'S OFFICE
CIVIL DISTRICT COURT

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

### STATE OF LOUISIANA

NO. 2018 – 1149

DIVISION " "

### RENEE REESE

### VERSUS

SECTION 13

### MARKETRON BROADCAST SOLUTIONS, LLC

FILED:_____

DALE N. ATKINS

DEPUTY CLERK

### CLASS ACTION PETITION

Plaintiff Renee Reese brings this class action petition and demand for jury trial against Defendant Marketron Broadcast Solutions, LLC. Plaintiff seeks redress for all persons injured by Defendant's conduct. Plaintiff alleges the following upon personal knowledge, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF ACTION

1.    Defendant Marketron is an Idaho-based corporation that specializes in "audience engagement solutions." This includes, *inter alia*, sending text message advertising to consumers on behalf of Marketron's corporate clients.

2.    One of Marketron's clients is Cumulous Media Incorporated. Cumulous Media is the owner of New Orleans-based radio station "Power 102.9." During live broadcasts of Power 102.9, Cumulous Media periodically offers contests for "free concert tickets." The purpose of the contests is to derive market data from the listeners of Power 102.9, and also to improve advertising revenues and related income by increasing the listenership of the radio station generally.

3.    In order to enter the free concert ticket contests, listeners must send texts to Defendant Marketron. Defendant conceals from the contest participants that after texting Marketron for the sole purpose of entering to win tickets, Defendant will respond by sending advertising messages with an automatic telephone dialing system. Defendant does not obtain prior express consent before sending these text messages. Furthermore, Defendant does not provide the recipients of these text messages with the continued knowledge of how to opt-out of the text

VERIFIED
2 · 7 · 18

messages. These actions are violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4.      As a result, Plaintiff, on behalf of herself and the putative Class, seeks an injunction requiring Defendant to cease all unlawful text messaging activities alleged in this Complaint, and an award of statutory damages to Plaintiff and the Class for each such violation, together with costs and reasonable attorneys' fees.

## PARTIES

5.      Plaintiff is a natural person and citizen of the State of Louisiana.

6.      Defendant Marketron Broadcast Solutions LLC is an Idaho-based, for-profit corporation. Defendant conducts business in the State of Louisiana.

## JURISDICTION AND VENUE

7.      Upon information and belief, jurisdiction and venue is proper because the tortious conduct herein sued upon occurred in Orleans Parish, Louisiana.

## COMMON FACTUAL ALLEGATIONS

8.      Power 102.9 is a New Orleans-area radio station owned by Cumulous Media Inc.

9.      Power 102.9 offers "contests" during its live broadcasts.

10.     One such contest involves listeners of Power 102.9 obtaining a "chance" for "free tickets" to a particular musical artist's New Orleans-area concert performance.

11.     The contests do not offer a chance to win free tickets to New Orleans-area concerts generally. Instead, Power 102.9 offers different contests throughout the year that are specific to a single artist and a specific concert.

12.     In order to enter any particular contest, listeners must text a password named in the radio broadcast offering the contest to a short code messaging number ("SMS number") also identified in the broadcast. Typically, the password is a song or album that is related to the artist being promoted by the contest.

13.     None of the contest offers broadcast by Power 102.9 forewarn listeners that by entering the contest they will be subject to advertising or telemarketing messages issued via automatic telephone dialing systems ("ATDS").

2

14.   Class Members (defined below) manifest nothing more than their interest in entering a contest for free concert tickets when they text the password to the SMS number provided by Power 102.9 (the "Enter-to-win Message").

15.   Defendant Marketron contracts with Cumulous Media to make text message calls to Class Members in connection with Cumulous Media's free ticket contest promotions.

16.   Marketron receives the Enter-to-win Messages from Class Members.

17.   In response to the Enter-to-win Message, Marketron sends text messages to Class Members that solicit business and/or that contain advertising and telemarketing messaging. Specifically, Marketron responds with messages that encourage Class members to click hyperlinks that lead to websites where Class Members can buy concert tickets.

18.   By virtue of including these hyperlinks, Marketron sends advertising and/or telemarketing messages to Class Members.

19.   Marketron does not receive prior express written consent from Class Members prior to sending these advertising and/or telemarketing messages.

20.   In fact, Marketron's advertisement messages to Class Members are concealed as "free giveaways."

21.   Additionally, following receipt of Class Members' Enter-to-win Messages, Defendant sends misleading text messages to Class Members' phone that trick Class Members into enrolling in Defendant's text messaging advertising campaigns.

22.   Specifically, Marketron messages Class Members that the "more texts" those Class Members receive, the "more chances" that Class Members have to win the specific tickets the Class Members have entered to win.

23.   Marketron then secures Class Members consent to receive more texts—but never reveals to Class Members that the "more texts" will not actually increase their chances of winning tickets that the Class Members have entered to win—but instead will subject Class Members to future advertising and telemarketing messages unrelated to the tickets desired by Class Members.

24.   Finally, Defendant does not disclose to Class Members how to discontinue further text messages, as detailed below.

3

## Experience of Plaintiff Reese

25.     Plaintiff Reese heard a radio broadcast on Power 102.9 offering entry into a contest for free tickets to a musical performance by the artist Tinashe.

26.     The broadcast explained to Plaintiff that in order to enter, she needed to text the word "joyride" to SMS code 68255.

27.     The broadcast did not mention in any way that Plaintiff would receive an ATDS telemarketing or advertising message in response to her Enter-to-win Message.

28.     The broadcast did not provide any information whatsoever apart from the fact that by texting "joyride," Plaintiff would be entered to win the tickets.

29.     After sending the Enter-to-win Message, Marketron sent a message back that read: "Power 102.9: Ur entered 2 win TINASHE@HOB tix! More txts=more chances! Reply POWER to join **Buy tix: bit.ly/tinasheKKND**" (emphasis added).

30.     The url "bit.ly/tinasheKKND" led to a website that sold tickets to New Orleans-area concerts.  Marketron sent this url to Plaintiff without prior express written consent in order to encourage her to buy tickets.

31.     Plaintiff replied "Power" to the text message.

32.     Defendant then sent a follow-up message asking Plaintiff to consent to "rcv mktg msgs from POWER" by replying with the letter "Y".

33.     Plaintiff replied with the letter "Y".

34.     Defendant then proceeded to send Plaintiff numerous text messages promoting various musical artists and their upcoming New Orleans-area concerts—none of which were related to the contest to receive free tickets to a Tinashe concert.

35.     These additional text message promotions did not include instructions on how the Plaintiff could opt-out of the automated phone calls.

36.     For example, on May 28, 2016, Plaintiff received the following message from Defendant: "Power 102.9: Reply REALLYREALLY to enter win 2 tix to KEVIN GATES (6.4 @OrpheumTheater) msg&data rates may apply For Plug Project info/tix click bit.ly/PlugProj."

37.     Defendant created and/or controlled the content of the aforementioned text messages, initiated or took steps necessary to place such text message advertising calls using an

4

automated telephone dialing system and/or were so involved in placing the texts as to be deemed to have initiated them.

38.    The nature of the text messages sent by Defendant indicates that it used an ATDS. Specifically, the hardware and/or software used by Defendant has the capacity to store, produce, and dial random and sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

39.    The text messages were written in an impersonal manner.

40.    The text messages were not addressed to Plaintiff by name.

41.    The text message advertising calls alleged herein were exclusively made by Defendant. Defendant made, or had made on their behalf, the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers.

42.    Through its conduct, Defendant caused Class Members actual harm by sending unauthorized text message calls at issue. Plaintiff and members of the Class were not only subjected to the aggravation that necessarily accompanies the receipt of unauthorized text messages, but also because consumers frequently have to pay their cell phone service providers for the receipt of such unauthorized text messages. Additionally, Class Members were harmed by the inconvenience and confusion attendant to receiving ATDS calls that are not accompanied by opt-out directions.

43.    Moreover, Plaintiff and members of the Class suffered injuries in the form of invasion of privacy and violations of their statutory rights, the monies paid to receive Defendant's unsolicited text messages, the diminished value and utility of their telephone equipment and telephone subscription service (i.e. the value of such equipment and services is higher when unencumbered by repeated and harassing text messages), the amount of time lost answering and fielding unwanted telemarketing text messages, the wear and tear on their telephone equipment, the loss of battery (which becomes diminished with each incoming phone call), the loss of battery

life (which has a finite number of charging cycles), and electricity costs required to recharge their cellular phones.

44.     Defendant did not send Plaintiff text messages pursuant a written agreement that included: (1) clear and conspicuous authorization for Defendant to deliver advertising messages via autodialed calls or robocalls/robotexts; (2) language indicating that signing such agreement is not a condition for purchasing products or services; or (3) Plaintiff's telephone number to which they signed and authorized advertisements or advertising messages to be delivered.

45.     Additionally, many of the text messages sent by Defendant to Plaintiff failed to include an automated opt-out mechanism for Plaintiff to make a do-not-call request.

46.     Defendant was and is aware that the above-described text message calls were being made on a widespread basis, and that the text message calls were being made to consumers who had not consented to receive them.

## CLASS ACTION ALLEGATIONS

47.     The above-pleaded facts are representative of the experiences of all Class Members.

48.     Plaintiff Reese brings this action on behalf of herself and a class defined as follows:

> **Class Definition:** All individuals in the United States whose wireless telephone number Defendant, or someone on Defendant's behalf, called using an automatic telephone dialing system or an artificial or prerecorded voice in relation to Power 102.9 concert promotions.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

6

49.     **Numerosity:** The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has sent text message advertising calls to thousands of consumers who fall into the definition of the Class. Class members can be identified through Defendant's records.

50.     **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include those in the following non-exclusive list:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     Whether Defendant sent text messages to Class Members using an ATDS, as contemplated by the TCPA;

(c)     Whether Defendant systematically sent text message advertising calls to Class Members who did not previously provide it with prior express written consent to receive such text message calls;

(d)     Whether Defendant sent text message advertising calls to Class Members where those messages did not include opt-out instructions;

(e)     Whether Plaintiff and Class Members are entitled to treble damages based on the willfulness of Defendant's conduct.

51.     **Typicality:** Plaintiffs claims are typical of the claims of other members of the Class in that Plaintiff and Class Members sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited text message calls.

52.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the Class Members. That is, Plaintiff and the Class Members sustained damages as a result of Defendant's conduct and received substantially the same text messages. Plaintiff also has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the

Class, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Class.

53.    **Appropriateness:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for Class Members to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

54.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**(Violation of 47 U.S.C. § 227, *et seq.* – Telephone Consumer Protection Act)**
**(on behalf of Plaintiff and the Class)**

55.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

56.    Defendant violated 47 U.S.C. § 227(b)(I)(A)(iii) of the TCPA by making advertising and/or telemarketing text message calls, using an ATDS, to Plaintiffs and Class Members' cellular telephones without prior express written consent.

57.    Defendant also violated 47 U.S.C. § 64.1200(b)(3) by failing to include in every call an automated opt-out mechanism for Plaintiffs and Class to make a do-not-call request in such calls.

58.    As a result of Defendant's unlawful conduct, Plaintiff and the members of the putative Class suffered actual damages and have also had their rights to privacy adversely

impacted. Plaintiff and the Class are therefore entitled to, among other things, a minimum of $500 in statutory damages for each such violation under 47 U.S.C. § 227(b)(3)(B).

59.     Because Defendant's misconduct was willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by the Plaintiff and the other members of the putative Class.

60.     Additionally, as a result of Defendant's unlawful conduct, Plaintiff and the other members of the Class are entitled to an injunction under 47 U.S.C. § 227(b)(3)(A) to ensure that Defendant's violations of the TCPA do not continue into the future.

**RELIEF REQUESTED**

**WHEREFORE,** Plaintiff Renee Reese, individually and on behalf of the Class, prays for the following relief:

(a)     An order certifying this case as a class action, appointing Plaintiff Renee Reese as Class Representative and her attorneys as Class Counsel;

(b)     Enter a judgment in favor of Plaintiff and the proposed class for all damages available under the TCPA, including $500.00 per violation and up to $1,500.00 per violation if Defendant willfully violated the TCPA;

(c)     An order declaring that Defendant's actions, as set out above, violate the TCPA;

(d)     A declaratory judgment that Defendant's telephone calling equipment constitutes an automated telephone dialing system under the TCPA;

(e)     An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

(f)     An injunction requiring Defendant to cease all unsolicited text message activities, and otherwise protecting the interests of the Class;

(g)     Award Plaintiff and the class attorney's fees and all expenses of this action, and requiring Defendant to pay the costs and expenses of class notice and claims administration; and

(h)     Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues for which a jury trial is allowed.

Respectfully submitted,

Roberto Luis Costales (#33696)
William H. Beaumont (#33005)
Emily. A. Westermeier (#36294)
Jonathan M. Kirkland (#37937)
BEAUMONT COSTALES LLC
3801 Canal Street, Suite 207
New Orleans, LA 70119
Telephone: (504) 534-5005
Facsimile:  (504) 272-2956
*Attorneys for Plaintiff*

**PLEASE SERVE VIA LOUISIANA LONG-ARM STATUTE:**

Marketron Broadcast Solutions, LLC
via its registered agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, Delaware 19808



FILED
FEB -5 2018
CLERK'S OFFICE
CIVIL DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

NO.                                                    **DIVISION " "**

**RENEE REESE**

**VERSUS**

**MARKETRON BROADCAST SOLUTIONS, LLC**

FILED:_____     _____

                                       DEPUTY CLERK

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, AND, IN THE ALTERNATIVE, MOTION TO EXTEND DEADLINE FOR CLASS CERTIFICATION

Plaintiff Renee Reese, by and through her undersigned counsel, hereby respectfully moves the Court for an Order certifying this case as a class action pursuant to Louisiana Code of Civil Procedure Articles 591 and 592. This motion is made pursuant to Louisiana Code of Civil Procedure 592, which requires Plaintiff to move for class certification within 90 days after service of Plaintiff's petition. While Plaintiff believes that this case is apt for class certification and that it can be certified on the basis of the complaint alone, Plaintiff requests an opportunity to do 3-4 months of class-related discovery to further support this motion, should the Court find class certification premature at this time.

The nature of Reese's legal claims and factual allegations are particularly well-suited to class certification. Through a common and standardized course of conduct, Defendant Marketron Broadcast Solutions, LLC ("Marketron") obtained the telephone numbers of thousands of consumers, and, without the requisite consent, instituted a text message advertising campaign to those consumers using an artificial or prerecorded voice. The methods by which Defendant obtained Class Members' phone numbers, the manner in which it called those phone numbers, and the substance of the phone calls themselves are *essentially identical* across all Class Members.

Through its conduct, Defendant repeatedly violated the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. ("TCPA"), thereby entitling Class Members to statutory damages and injunctive relief. For these reasons and as discussed further herein, the proposed Class meets



each of the requisites to certification under Louisiana Code of Civil Procedure 591(A) and (B), and the instant motion may be granted in its entirety.

## I.   FACTUAL BACKGROUND

Power 102.9 is a New Orleans-area radio station owned by Cumulus Media Inc. Pet. ¶ 9. Power 102.9 offers "contests" during its live broadcasts. *Id.* at ¶ 9.   One such contest involves listeners of Power 102.9 obtaining a "chance" for "free tickets" to a particular musical artist's New Orleans-area concert performance. *Id.* at ¶ 10.  In order to enter any particular contest, listeners must text a password named in the radio broadcast offering the contest to a short code messaging number ("SMS number") also identified in the broadcast. *Id.* at ¶ 12. None of the contest offers broadcast by Power 102.9 forewarn listeners that by entering the contest they will be subject to advertising or telemarketing messages issued via automatic telephone dialing systems ("ATDS"). *Id.* at ¶ 13. Class Members manifest nothing more than their interest in entering a contest for free concert tickets when they text the password to the SMS number provided by Power 102.9 (the "Enter-to-win Message"). *Id.* at ¶ 14.

Defendant Marketron receives the Enter-to-win Messages from Class Members and in response sends text messages to Class Members that solicit business and/or that contain advertising and telemarketing messaging. *Id.* at ¶¶ 16, 17.  Specifically, Marketron responds with messages that encourage Class members to click hyperlinks that lead to websites where Class Members can buy concert tickets. *Id.* at ¶¶ 17, 18.

Marketron does not receive prior express written consent from Class Members prior to sending these advertising and/or telemarketing messages. *Id.* at ¶ 19. In fact, Marketron's advertisement messages to Class Members are concealed as "free giveaways." *Id.* at ¶ 20. Additionally, following receipt of Class Members' Enter-to-win Messages, Defendant sends misleading text messages to Class Members' phone that mislead Class Members into enrolling in Defendant's text messaging advertising campaigns. *Id.* at ¶ 21.  Specifically, Marketron messages Class Members that the "more texts" those Class Members receive, the "more chances" that Class Members have to win the specific tickets the Class Members have entered to win. *Id.* at ¶ 22. Marketron then secures Class Members consent to receive more texts—but never reveals to Class Members that the "more texts" will not actually increase their chances of winning tickets that the

Class Members have entered to win—but instead will subject Class Members to future advertising and telemarketing messages unrelated to the tickets desired by Class Members. *Id.* at ¶ 23.

Defendant continues to text Class Members numerous text messages promoting various musical artists and their upcoming New Orleans-area concerts—none of which are related to the contest to receive the free tickets that Class Members initially entered to win. *Id.* at ¶ 34. These additional text message promotions do not include instructions on how Class Members could opt-out of the automated phone calls. *Id.* at ¶ 35.

## II.     ARGUMENT

### a.   The Proposed Class

Plaintiff seeks certification of a nationwide class of individuals (the "Class"), defined as follows:

> All individuals in the United States whose wireless telephone number Defendant, or someone on Defendant's behalf, called using an automatic telephone dialing system or an artificial or prerecorded voice in relation to Power 102.9 concert promotions.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

As demonstrated below, the proposed Class meets each of the Louisiana Code of Civil Procedure's ("La. CCP") requisites to certification and therefore, the instant motion should be granted in its entirety.

### b.   The Standard for Certification.

Class certification is appropriate under the Code of Civil Procedure when the proponent of certification demonstrates that each of the requirements of La. CCP 591(A) and at least one of the subsections under La. CCP 591(B) have been satisfied. La. CCP 591(A) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable

3

(numerosity); (ii) that there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); (iv) that both the named-representative and his or her counsel have and will continue to adequately represent the interests of the class (adequacy); and (v) the class may be defined objectively in terms of ascertainable criteria (ascertainability).

In this case, Plaintiff seeks certification of the proposed Class under both La. CCP 591(B)(2) and La. CCP 591(B)(3). In order to certify a class under La. CCP 591(B)(2), a plaintiff must show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, so that "final injunctive relief or corresponding declaratory relief" is appropriate. Under La. CCP 591(B)(3) there must be questions of law or fact common to the proposed class members, which "predominate" over any questions affecting only individual members, and the class mechanism must be "superior" to other available methods for fairly and efficiently adjudicating the controversy. In determining whether to certify a proposed class, a court does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).

### c. The Proposed Class

#### i. *The Numerosity Requirement is Satisfied.*

La. CCP 591(A)'s first requirement – numerosity – is satisfied where "the class is so numerous that joinder of all members is impractical." La. CCP 591(A)(1). As long as the court can draw reasonable inferences from the facts before it as to the approximate size of the class and the infeasibility of joinder, the numerosity requirement is satisfied. *Mullen v. Treasure Chest Casino*, 186 F.3d 620, 625-25 (5th Cir. 1999).

Here, Reese alleges—and discovery will show—that Defendant has made unsolicited telephone calls to the cellular telephones of thousands of individuals throughout the country. Pet. ¶ 49; see *Mullen*, 186 F.3d at 624 (finding that a class of between 100 and 150 satisfies the numerosity prerequisite); Newberg on Class Actions § 3:5, 243-46 ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands... In such cases, the impracticability of bringing all class members before the court has been obvious,

4

and the Rule 23(a)(1) requirement has been easily met.") Accordingly, the proposed Class satisfies the numerosity requirement.

> ii.    *The Commonality Requirement is Satisfied.*

Next, La. CCP 591(A) requires that "there are questions of law or fact common to the class." To meet the commonality requirement, the named-representative is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, commonality requires that the claims of the class "depend upon a common contention...of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Here, there are at least three questions common to all class members:

1) Did Defendant call Class Members using an ATDS?;
2) Did the "consent" obtained by Defendant allow them to call Class Members' telephones?; and
3) Did Defendant fail to include the necessary "opt out" language in its calls to Class Members?

Pet. ¶ 50. The resolution of these questions as to Plaintiff Reese will resolve precisely the same questions for all other Class Members. Additionally, the resolution of these common questions is possible through "generalized" evidence that is applicable to all Class Members. Defendant's equipment for making the calls, the substance of the consent provided by each Class Member, and the text of the text message calls themselves, are liability questions that Plaintiff can present for her own claim, and all Class Members' claims, at the same time in trial.

Accordingly, the commonality requirement is met as well.

> iii.    *Plaintiff's Claims are Typical of the Class.*

Article 591 next requires that Plaintiff's claims are typical of those of the other Class members. La. CCP 591(A)(3). The test for typicality is not demanding. *Mullen*, 186 F.3d at 625. Typicality is satisfied when the named plaintiff's claims for relief arise from the same common nucleus of operative facts as the claims of absent class members. Newberg on Class Actions § 3.13 at 3-71 (3d ed. 1992) ("[A] plaintiff's claim is typical if it arises from the same event or practice

5

or course of conduct that gives rise to the claims of other class members, and if his claims are based on the same legal theory."). Typicality does not require the claims of the class members be identical. Rather, a claim by a representative plaintiff is "typical" if it is one which members of the proposed class should reasonably expect to be raised. *Mullen*, 186 F.3d at 625. A strong similarity of legal theories will, accordingly, satisfy the typicality requirement, despite factual differences between the representative plaintiffs and the class members. *Forbush v. J.C. Penney Co. Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993).

Here, Plaintiff and the proposed Class were each subjected to Defendant's common course of conduct. That is, they each received one or more unsolicited text message advertising calls from Defendant encouraging them to purchase concert tickets. Pet. ¶ 51. There is nothing particularly unique or special about Plaintiff Reese's claim when compared to those of other Class Members. She is just one of many consumers whose telephone was subject to allegedly unlawful phone calls by Defendant. As such, by pursuing her own claims, Plaintiff will necessarily advance the interests of the proposed Class in satisfaction of La. CCP 591(A)(3)'s typicality requirement.

　　　　*iv.　　The Adequacy of Representation Requirement is Satisfied.*

Finally, La. CCP 591(A) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." La. CCP 591(A)(4). To establish adequacy of representation, Plaintiff must show that (1) proposed Plaintiff's counsel is competent to handle the case and (2) there are no disabling conflicts of interests among the Class Members and Plaintiff. *Payne v. Travenol Laboratories, Inc.*, 673 F.2d 798, 810 (5th Cir. 1982). Both requirements are met here.

Plaintiff Reese has the same interests as the other members of the Class. She, like other members of the class, received unauthorized text message advertising calls from Defendant as a result of Defendant's uniform course of unlawful conduct. Pet. ¶ 51. Her interests are aligned with the Class Members' interests, and she has no interests antagonistic to those of the Class. *Id.*

Plaintiff's counsel are experienced in litigating collective actions and have represented classes of aggrieved Plaintiffs both large and small in Louisiana. *See, e.g. Murillo et al v. Coryell County Tradesman et al*, No. 15-3641, Rec. Doc. 357 (E.D. La. Oct. 10, 2017) (Plaintiff's counsel successfully represented 160 plaintiffs, involving considerable expenditures of time and costs, as

6

well as complex discovery and trial issues). Plaintiff's counsel are well-respected members in the legal community and are more than adequate counsel to represent the interests of the class.

### d. The Proposed Class Meets the Requirements of La. CCP 591(B)(2) and (B)(3).

Once the prerequisites of Rule 23(a) have been satisfied, one of the three subsections of La. CCP 591(B) must be satisfied as well. Here, Plaintiff seeks certification of the proposed Class under La. CCP 591(B)(2) and (B)(3).

#### i.  *La. CCP 591(B)(2) is Satisfied.*

According to La. CCP 591(B)(2), class certification is proper if the Defendants "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . ." and the representatives are seeking "final injunctive relief or corresponding declaratory relief."

There should be no question that the Defendant acted on grounds generally applicable to the Class as a whole. It made essentially identical text message advertising calls to Plaintiff and each of the other putative Class members without their consent seeking to draw customers to websites in order to sell concert tickets. Pet. ¶¶ 17, 18, 41. Likewise, Plaintiff and the Class members were opted in to the text message advertising campaign in the same manner in that their cellular telephones existed in Defendant's records at the time the campaign was instituted. *Id.* at ¶¶ 17, 18. Thus, if a jury finds that Defendant's conduct was and is unlawful, final injunctive relief will be necessary to protect Plaintiff and the other members of the Class from that conduct in the future. Thus, the requirements of Rule 23(b)(2) are satisfied.

#### ii.  *La. CCP 591(B)(3) is Satisfied.*

Plaintiff also seeks class certification under La. CCP 591(B)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. This case easily meets both of these requirements. First, La. CCP 591(B)(3)'s "predominance requirement looks to whether the proposed class is 'sufficiently cohesive' to warrant 'adjudication' by representation.' " *Unger v. J. Amedisys*, 401 F. 3d 316, 320-321 (5th Circ. 2005) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)). The inquiry requires courts

to identify "the substantive issues that will control the outcome, assess[ ] which issues will predominate, and then determin[e] whether the issues are common to the class." *Madison v. Chalmette Refining, LLC*, 637 F. 3d 551, 555 (5th Circ. 2011) (citing *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir.2003)).

In this case, the claims of Plaintiff and other Class Members all arise from Defendant's standardized conduct of making text message advertising calls to their cellular telephones without obtaining prior consent. Thus, the common questions described in Section II(C)(ii), supra, predominate over any issues affecting only individual Class Members (e.g., the total number of telephone calls received by each individual Class Member, or the precise dates and/or times that Class Members received the calls). Moreover, the evidence necessary to prove Plaintiff's and the Class's claims—including the content of the telephone calls, the manner and means by which Defendant made the calls, to what phone numbers they were made, and how Defendant obtained those phone numbers—will come from Defendant's own records, rather than from individual Class members themselves. The only claim at issue in this case—Defendant's violation of the TCPA—presents numerous common and predominant issues that are all subject to generalized proofs i.e. proving Plaintiff Reese's claim proves the claims of all other Class Members. As such, the predominance requirement is satisfied.

Finally, La. CCP 591(B)(3) further requires that the class action mechanism be superior to the other available methods for the fair and efficient adjudication of the controversy. The instant class action is superior to other available methods for litigating Plaintiff's and the other Class Members' claims. Absent class treatment, each individual Class Member would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. Such a result would be neither efficient nor fair to anyone, including Defendant. Moreover, there is no indication that members of the Class have a strong interest in individual litigation, let alone any incentive to pursue their claims individually, given the small amount of damages likely to be recovered relative to the resources required to prosecute such an action.

Accordingly, the superiority requirement is satisfied as well.

## CONCLUSION

For the foregoing reasons, and which will be borne out by class discovery, this case is appropriate for class certification. Accordingly, Plaintiff Renee Reese, on her own behalf and on behalf of the proposed Class, respectfully requests that the Court (1) certify the proposed class; or (2) allow for and schedule discovery to take place on class-wide issues, and grant Plaintiff leave to file a supplemental memorandum in support of her Motion for Class Certification upon the conclusion of class-wide discovery.

Respectfully submitted,

Roberto Luis Costales (#33696)
William H. Beaumont (#33005)
Emily. A. Westermeier (#36294)
Jonathan M. Kirkland (#37937)
BEAUMONT COSTALES LLC
3801 Canal Street, Suite 207
New Orleans, LA 70119
Telephone: (504) 534-5005
Facsimile: (504) 272-2956
*Attorneys for Plaintiff*