UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RENEE REESE                                              CIVIL ACTION

VERSUS                                                   NO. 18-1982

MARKETRON BROADCAST                                      SECTION "R" (1)
SOLUTIONS, INC.

## ORDER AND REASONS

Defendant Marketron Broadcast Solutions, Inc. moves to dismiss plaintiff Renee Reese's complaint for lack of standing and for failure to state a claim.[1] Plaintiff moves to remand the case to state court.[2] For the following reasons, the Court grants Marketron's motion to dismiss and denies plaintiff's motion to remand.

## I. BACKGROUND

Plaintiff Renee Reese filed this putative class action seeking damages and equitable relief under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. The TCPA makes it unlawful to make a call using an automatic telephone dialing system "to any telephone number assigned to a . . . cellular telephone service," without the recipient's express consent. *Id.*

---

[1]   R. Doc. 4.
[2]   R. Doc. 5.

§ 227(b)(1)(A)(iii). It also provides a private right of action to seek injunctive relief and damages. *Id.* § 227(b)(3). A text message is a "call" within the meaning of the statute. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016).

Plaintiff alleges that she received unwanted text messages from Marketron after entering a contest to win free tickets to a performance by the artist Tinashe.[3] Plaintiff allegedly heard about this contest on a radio broadcast.[4] To enter the contest, plaintiff sent a text message containing a keyword ("joyride") to an SMS short code used by Marketron.[5] Marketron then sent the following message to plaintiff:

> Power1029: Ur entered 2 win TINASHE@HOB tix! More txts=more chances! Reply POWER to join Buy tix: bit.ly/tinasheKKND[6]

The link "bit.ly/tinasheKKND" led to a website that allegedly sold tickets to concerts in the New Orleans area.[7] Plaintiff replied with the message "POWER."[8] Marketron then sent another message:

> Marketron Mobile Alerts on 68255: Reply Y to consent to rcv mktg msgs from POWER. 5 msgs/mo. Reply STOP=stop,

---

[3] R. Doc. 1-2 at 6.
[4] *Id.* ¶ 25.
[5] *Id.* ¶¶ 28-29.
[6] *Id.* ¶ 29.
[7] *Id.* ¶ 30.
[8] *Id.* ¶ 31.

2

>    HELP=help. Msg&DataRatesMayApply. Consent not required to buy goods/svcs.[9]

Plaintiff replied with the message "Y," and later received a number of additional text messages from Marketron.[10] Many of these messages allegedly lacked instructions on how to opt out of receiving further messages.[11] The complaint lists several injuries allegedly suffered by plaintiff as a result of Marketron's conduct, including time spent answering and fielding unwanted telemarketing text messages, charges for receiving the messages, wear and tear on her telephone, and loss of battery life.[12]

This is the second case in which plaintiff has made these allegations. Plaintiff first sued Marketron and other defendants in this Court on September 28, 2017.[13] Plaintiff voluntarily dismissed the case on February 5, 2018. On the same day, plaintiff filed her second suit against Marketron—this time in state court. Marketron removed the case to this Court,[14] and now moves to dismiss for failure to state a claim and for lack of standing.[15] Plaintiff moves to remand the case to state court.[16]

---

[9] *Id.* ¶ 32; R. Doc. 4-4 at 4.
[10] R. Doc. 1-2 at 6 ¶¶ 33-34.
[11] *Id.* at 8 ¶ 45.
[12] *Id.* at 7-8 ¶¶ 42-43.
[13] Case No. 17-9772.
[14] R. Doc. 1.
[15] R. Doc. 4.
[16] R. Doc. 5.

## II. DISCUSSION

### A. Removal Jurisdiction

Plaintiff moves to remand this case to state court on the ground that defendant has failed to establish subject-matter jurisdiction.[17] Plaintiff argues that defendant cannot both assert federal question jurisdiction under the TCPA and seek dismissal for lack of standing under the TCPA.

This argument is unavailing. A case may be removed under 28 U.S.C. §§ 1331 and 1441 "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). The TCPA claim in plaintiff's complaint plainly presents such a federal question. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 377 (2012) (holding that a TCPA claim "plainly arises under the laws of the United States" (internal quotation marks and alterations omitted)). Accordingly, defendant properly removed this case to federal court, and plaintiff's motion to remand must be denied.

---

[17] R. Doc. 5-1 at 5.

B. **Standing**

Marketron contends that plaintiff lacks standing because she fails to show any concrete invasion of a legally protected interest.[18] In any suit in federal court, the issue of standing presents a "threshold jurisdictional question." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The requirement that a party have standing to bring suit flows from Article III of the Constitution, which limits the scope of the federal judicial power to the adjudication of "cases" or "controversies." U.S. Const. art. III, § 2. Standing consists of three elements: (1) the plaintiff must have suffered an "injury in fact," which is an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent"; (2) the injury must be "fairly traceable" to the challenged conduct of the defendant; and (3) it must be likely that plaintiff's injury will be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).

Because a motion to dismiss for lack of standing challenges the Court's subject matter jurisdiction, it is governed by Federal Rule of Civil Procedure 12(b)(1). *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017). A court may dismiss a claim for lack of constitutional standing based on "(1) the

---

[18] R. Doc. 4-1 at 18.

complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

Marketron argues that plaintiff cannot satisfy the injury-in-fact requirement of standing because she consented to receive marketing messages.[19] In a TCPA case, consent is an affirmative defense. *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 730 (S.D. Tex. 2012). Most courts address consent as a merits issue rather than as an issue of constitutional standing. *See, e.g.*, *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) (holding that plaintiff had standing to sue, but that defendant was entitled summary judgment because of plaintiff's consent); *Smith v. Blue Shield of Cal. Life & Health Ins. Co.*, 228 F. Supp. 3d 1056 (C.D. Cal. 2017) (same); *Connelly v. Hilton Grant Vacations Co., LLC*, No. 12-599, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012) (denying motion to dismiss for lack of standing based on consent because "consent is an affirmative defense to be raised and proved by a TCPA defendant"). Moreover, the injuries plaintiff allegedly suffered—including invasion of privacy, time spent answering and fielding unwanted telemarketing text messages, charges for receiving the

---

[19] R. Doc. 4-1 at 19.

messages, wear and tear on her telephone, and loss of battery life—have been held sufficient to satisfy Article III's requirements.[20] *See, e.g., Van Patten*, 847 F.3d at 1043 (holding that a TCPA plaintiff satisfies Article III standing by alleging that "[u]nsolicited telemarketing phone calls or text messages . . . invade [her] privacy and disturb [her] solitude"); *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 491 (7th Cir. 2014) (noting that a TCPA plaintiff "may be annoyed, distracted, or otherwise inconvenienced if his use of the [fax] machine is interrupted by unsolicited faxes to it, or if the machine wears out prematurely because of overuse attributable to junk faxes"); *Sartin v. EKF Diagnostics, Inc.*, No. 16-1816, 2016 WL 7450471, at *4 (E.D. La. Dec. 28, 2016) (noting that "a number of district courts have found that the wasted time associated with receipt of an unlawful fax or telephone call suffices to confer standing to sue under the TCPA"); *Jamison v. Esurance Ins. Servs., Inc.*, No. 15-2484, 2016 WL 320646, at *3 (N.D. Tex. Jan. 27, 2016) (finding that plaintiff satisfied injury-in-fact requirement by alleging that defendant's unsolicited telephone calls caused plaintiff to incur charges). Thus, plaintiff has standing, and the Court has jurisdiction over this matter.

---

[20]  R. Doc. 4 at 4 ¶ 12.

### C. Motion to Dismiss Under Rule 12(b)(6)

Marketron also moves to dismiss plaintiff's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[21] To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence

---

[21] R. Doc. 4-1 at 7.

of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007), the claim must be dismissed. Dismissal based on an affirmative defense "may be appropriate" on a Rule 12(b)(6) motion, but only if the "affirmative defense appears on the face of the pleadings." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013) (quoting *Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

In her opposition to Marketron's motion to dismiss, plaintiff articulates two bases for her TCPA claim. First, she argues that Marketron's first text message to her violated the TCPA because it included advertising or telemarketing without her prior express written consent.[22] The alleged advertisement was a link to a website that sold tickets to concerts in the New Orleans area.[23] Second, plaintiff argues that many of Marketron's messages violated the TCPA because they lacked opt-out instructions.[24]

---

[22] R. Doc. 11 at 4. Plaintiff refers to this allegation as "the crux" of her case. *Id.*
[23] R. Doc. 1-2 at 6 ¶ 30.
[24] R. Doc. 11 at 8.

9

### 1. Advertising in Marketron's First Message

Plaintiff's argument that Marketron's first message violates the TCPA relies primarily on a regulation promulgated by the FCC. That regulation prohibits any telephone call to a cellphone "that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system . . . , other than a call made with the prior express written consent of the called party." 47 C.F.R. § 64.1200(a)(2).

The regulation defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services," and "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § 64.1200(f)(1), (12). "Prior express written consent" is defined as

> an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system . . . , and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

*Id.* § 64.1200(f)(8). This agreement must also "include a clear and conspicuous disclosure" of two things: (1) that the seller will deliver "telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice," and (2) that the called party need not sign

the agreement nor enter into the agreement "as a condition of purchasing any property, goods, or services." *Id.* § 64.1200(f)(8)(i).

This prior-express-*written*-consent rule for advertising and telemarketing was adopted in 2012. *See In the Matter of Rules & Regulations Implementing the TCPA*, 27 FCC Rcd. 1830 (2012) (2012 Order). Previously, the regulation—like the statute—required only prior express consent, and did not distinguish between advertising messages and other types of messages received by cellphones. *See In the Matter of Rules & Regulations Implementing the TCPA*, 7 FCC Rcd. 8752 (1992) (1992 Order); *see also Van Patten*, 847 F.3d at 1044-45. In its 1992 Order, the FCC established a relatively low bar for prior express consent, finding that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." 1992 Order, 7 FCC Rcd. at 8769 (citing H.R. Rep. 102-317, at 13 (1991)).

According to plaintiff's allegations, Marketron failed to obtain prior express written consent before it sent the first text message. But Marketron argues that it needed only prior express consent, the requirement for messages without advertising or telemarketing. Marketron further argues

that plaintiff provided that consent.[25] Thus, the sufficiency of plaintiff's TCPA claim based on the first text message turns on whether that message constitutes advertising or telemarketing within the meaning of 47 C.F.R. § 64.1200, and if not, whether she provided prior express consent.

### a. *Marketron's first text message did not constitute advertising or telemarketing*

Marketron's first text message was sent in response to plaintiff's request to enter a contest for free concert tickets. Marketron's response included confirmation of plaintiff's entry, and the following language: "Buy tix: bit.ly/tinasheKKND." The linked website allegedly sold tickets to the concert.[26]

Not all text messages containing promotional information constitute advertising or telemarketing. In 2015, the FCC issued an order finding that "a one-time text message sent immediately after a consumer's request for the text does not violate the TCPA and our rules." *In the Matter of Rules & Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8015 (2015) (2015 Order). "For example, a consumer might see an advertisement or another form of call-to-action display and respond by texting 'discount' to the

---

[25] R. Doc. 4-1 at 9-13.
[26] R. Doc. 1-2 at 6 ¶¶ 29-30; *see also* R. Doc. 11 at 5 (plaintiff's brief stating that "the link was to a webpage where one could buy tickets to the concert").

retailer, who replies by texting a coupon to the consumer." *Id.* The retailer's reply message is not telemarketing, the FCC noted, because the consumer "requests and expects to receive the on-demand text message promptly in response." *Id.* The FCC concluded that "a one-time text sent in response to a consumer's request for information does not violate the TCPA or the Commission's rules so long as it: (1) is requested by the consumer; (2) is a one-time only message sent immediately in response to a specific consumer request; and (3) contains only the information requested by the consumer with no other marketing or advertising information." *Id.* at 8016.

Additionally, a number of district courts have held that informational messages do not rise to the level of advertising or telemarketing merely because the messages contain some commercial information. *See, e.g.*, *Smith*, 228 F. Supp. 3d 1056; *Wick v. Twilio Inc.*, No. 16-914, 2016 WL 6460316 (W.D. Wash. Nov. 1, 2016). In *Smith*, for example, the court distinguished telemarketing calls from the defendant's messages based on the "informative nature of [the] messages." 228 F. Supp. 3d at 1066. The defendant's messages "notified recipients that they should have received information about changes to their insurance plan, encouraged them to seek out information about their plan by examining the information packet and visiting [the defendant's] website, and directed them to call the member

service number (as opposed to the sales department) to resolve any questions or issues." *Id.* Although the defendant's "website contains the capability of allowing consumers to engage in commerce," the Court held that this "does not transform any message including its homepage into telemarketing or advertising." *Id.* at 1067.

In *Wick*, the plaintiff provided his cellphone number and other information in order to obtain a free sample from a website. 2016 WL 6460316, at *1. "Immediately after submitting his information, plaintiff received a text message stating: 'Noah, Your order at Crevalor is incomplete and about to expire. Complete your order by visiting http://hlth.co/xDoXEZ.'" *Id.* In holding that this message did not constitute telemarketing, the court noted that the message "related solely to the consumer transaction [plaintiff] had initiated," and did not "offer[] or encourage[] the purchase of any product other than the free sample for which plaintiff submitted his information." *Id.* at *3.

Under some circumstances, Marketron's first message could be construed as "advertising the commercial availability . . . of [a] service[]." 47 C.F.R. § 64.1200(f)(1). But plaintiff already knew about the availability of tickets to the concert. Like the message in *Wick*, Marketron's first text message related solely to the concert for which plaintiff desired free tickets,

and did not encourage the purchase of tickets for any other concert. Although the linked website allegedly offered tickets for other concerts in the New Orleans area, this alone does not transform Marketron's message into telemarketing. *See Smith*, 228 F. Supp. 3d at 1067.

Moreover, Marketron's first message was "a one-time text message sent immediately after" plaintiff's own initial text message. 2015 Order at 8015. This timing further supports the "informative nature" of Marketron's first text message. *Smith*, 228 F. Supp. 3d at 1066. Because of the informative nature of the message, the Court holds that Marketron's first text message to plaintiff did not rise to the level of advertising or telemarketing under 47 C.F.R. § 64.1200. Thus, Marketron need show only that it received plaintiff's prior express consent, not her prior express *written* consent.

### b. *Plaintiff provided prior express consent to receive Marketron's first text message*

Showing prior express consent is substantially less burdensome than showing prior express written consent. Two circuit courts have held that "when a consumer provides her cell phone number to the caller," she consents to receive messages from the caller so long as the messages are "related to the reason the number was provided." *Blow v. Bijora, Inc.*, 855 F.3d 793, 804 (7th Cir. 2017) (characterizing the holding of *Van Patten*, 847 F.3d at 1046); *see also id.* at 804-05 ("Because the texts [the plaintiff]

15

received were reasonably related to the purpose for which she provided her cell phone number, . . . [the plaintiff] provided prior express consent for the text messages.").

Plaintiff's initial text message constitutes prior express consent to receive Marketron's first text message. Confirmation of plaintiff's entry into the contest for free concert tickets is clearly related to the purpose for which plaintiff sent her initial message. As one court has noted, when an individual sends a text message to enter into a contest or promotion, "it is difficult to imagine how he could have been certain that the [recipient] received his message without a confirmatory response." *Emanuel v. L.A. Lakers, Inc.*, No. 12-9936, 2013 WL 1719035, at *3 (C.D. Cal. Apr. 18, 2013). And the link in Marketron's first text message merely provided information about where to buy tickets for the concert. This information is clearly related to the purpose for which plaintiff sent her initial text message to Marketron: to try to win free tickets for that same concert.

The two cases on which plaintiff relies, *Meyer v. Bebe Stores, Inc.*, No. 14-267, 2015 WL 431148 (N.D. Cal. Feb. 2, 2015), and *Sullivan v. All Web Leads, Inc.*, No. 17-1307, 2017 WL 2378079 (N.D. Ill. June 1, 2017), are distinguishable. *Meyer* held that a consumer stated a TCPA claim based on *unsolicited* promotional text messages. 2015 WL 431148, at *1. And in

*Sullivan*, the consumer received calls advertising non-Obamacare-compliant health insurance plans after requesting quotes for Obamacare-compliant plans. 2017 WL 2378079, at *1. Neither case provides persuasive authority for plaintiff's position.

The Court therefore holds that when plaintiff sent her initial text message to enter the contest for free concert tickets, she invited a one-time confirmatory response containing information related to that concert. Thus, Marketron's first text message did not contain advertising or telemarketing within the meaning of 47 C.F.R. § 64.1200, and plaintiff provided prior express consent to receive the message. Plaintiff fails to state a TCPA claim based on Marketron's first text message.

### 2. Lack of Opt-Out Instructions in Marketron's Messages

The second asserted basis for plaintiff's TCPA claim is that some of Marketron's messages lacked opt-out instructions. Plaintiff cites 47 C.F.R. § 64.1200(b)(3), which states:

> In every case where the artificial or prerecorded voice telephone message includes or introduces an advertisement or constitutes telemarketing and is delivered to a residential telephone line or any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii), provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two (2)

seconds of providing the identification information required in paragraph (b)(1) of this section.

Plaintiff does not allege that she received any "artificial or prerecorded voice telephone message" from Marketron. Instead, she alleges only that Marketron's "*text message* promotions did not include instructions on how [to] opt-out of the automated phone calls."[27] The opt-out requirement therefore does not apply to Marketron's messages, and plaintiff fails to state a TCPA claim based on that requirement.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion to remand, and GRANTS Marketron's motion to dismiss under Rule 12(b)(6). Plaintiff's complaint is DISMISSED.

New Orleans, Louisiana, this __8th__ day of May, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[27] R. Doc. 1-2 at 6 ¶ 35, 8 ¶ 45.

18